# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Olsson*, 2012 IL App (2d) 110856

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PAUL OLSSON, Defendant-Appellant. |
| District & No. | Second District<br>Docket Nos. 2-11-0856, 2-12-0012 cons. |
| Filed | November 6, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The review proceedings conducted with respect to defendant's commitment pursuant to section 104-25(g)(2) of the Code of Criminal Procedure as a person unfit to stand trial and for whom treatment has been unsuccessful were deficient due to the failure of the facility to which defendant was committed to report on his treatment and condition; therefore, the orders entered following those proceedings were vacated and the cause was remanded for a new hearing pursuant to section 104-25(g)(2)(i). |
| Decision Under Review | Appeal from the Circuit Court of Lake County, Nos. 05-CF-3046, 05-CF-3629; the Hon. Christopher R. Stride, Judge, presiding. |
| Judgment | Vacated and remanded with directions. |

Counsel on
Appeal

Gillian E. Gosch, of Waukegan, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (Lawrence M. Bauer and Diane L. Campbell, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE ZENOFF delivered the judgment of the court, with opinion.

Justices Burke and Hudson concurred in the judgment and opinion.

**OPINION**

¶ 1    These consolidated appeals arise from orders entered during the period when defendant, Paul Olsson, was in the custody of the Department of Human Services (Department) pursuant to section 104-25(g)(2) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/104-25(g)(2) (West 2010)), which provides for the potentially long-term commitment of a criminal defendant who has been found unfit to stand trial and for whom treatment to attain fitness has been unsuccessful. The period of commitment under this provision may be as long as the maximum sentence for the charged offense. *Id.* While the defendant is committed under section 104-25(g)(2), the trial court must periodically review his or her condition and treatment needs. Defendant argues that the trial court's review proceedings were deficient because (1) the facility to which he is committed failed to comply with its statutory duty to report on his treatment and his condition, and (2) the trial court failed to conduct a meaningful hearing to determine whether he had been restored to fitness. We agree with the first argument and therefore vacate the orders and remand for further proceedings. We find no error, however, relative to the question of defendant's fitness.

¶ 2    At the outset, a somewhat detailed overview of the Code's provisions concerning fitness to stand trial will serve as a useful backdrop for an understanding of the procedural history of these appeals and of the issues defendant raises. "A defendant is unfit to stand trial if he is 'unable to understand the nature and purpose of the proceedings against him or to assist in his defense.' " *People v. Weeks*, 393 Ill. App. 3d 1004, 1008 (2009) (quoting *People v. Burton*, 184 Ill. 2d 1, 13 (1998)). The due process clause forbids conviction of a defendant who is unfit to stand trial. *People v. McCallister*, 193 Ill. 2d 63, 110 (2000). Section 104-13(a) of the Code (725 ILCS 5/104-13(a) (West 2010)) provides that, when an issue of fitness involves the defendant's mental condition, the court shall order the defendant to be examined by one or more physicians, clinical psychologists, or psychiatrists. The person or persons conducting the examination must submit a written report. 725 ILCS 5/104-15(a) (West 2010). If the report indicates that the defendant is unfit to stand trial, it shall also include an opinion as to whether, with treatment, the defendant is likely to attain fitness

within one year. 725 ILCS 5/104-15(b) (West 2010). The trial court shall conduct a fitness hearing within 45 days of receipt of the report. 725 ILCS 5/104-16(a) (West 2010). Either the State or the defendant may demand that the issue of fitness be heard by a jury. 725 ILCS 5/104-12 (West 2010). Additionally, the court, on its own motion, may refer the question to a jury. *Id.*

¶ 3 If the court or the jury finds that the defendant is unfit, it shall also determine "whether there is substantial probability that the defendant, if provided with a course of treatment, will attain fitness within one year," in which case the trial court shall order the defendant to undergo treatment for the purpose of rendering him or her fit. 725 ILCS 5/104-16(d) (West 2010). Pursuant to section 104-18(a) of the Code (725 ILCS 5/104-18(a) (West 2010)), the defendant's treatment supervisor must submit a written progress report at least seven days before any fitness hearing *or* whenever the treatment supervisor believes that the defendant has attained fitness or that there is not a substantial probability the defendant will attain fitness within one year of the original finding of unfitness. Section 104-20(a) of the Code (725 ILCS 5/104-20(a) (West Supp. 2011)) provides that the trial court shall set a date to reexamine the issue of fitness not more than 90 days after "entry or continuation of any order to undergo treatment" or within 14 days after receipt of a progress report indicating that the defendant has attained fitness or that there is not a substantial probability the defendant will attain fitness within one year of the original finding of unfitness. If the court finds that the defendant is making progress toward fitness, the court may continue or modify the original treatment order. 725 ILCS 5/104-20(b) (West Supp. 2011). If the court finds that the defendant remains unfit and is not making progress toward attaining fitness within one year of the original finding of unfitness, the court must proceed in accordance with section 104-23 of the Code (725 ILCS 5/104-23 (West 2010)).

¶ 4 Section 104-23 provides, in pertinent part, as follows:

"(a) Upon a determination that there is not a substantial probability that the defendant will attain fitness within one year from the original finding of unfitness, a defendant or the attorney for the defendant may move for a discharge hearing pursuant to the provisions of Section 104-25. The discharge hearing shall be held within 120 days of the filing of a motion for a discharge hearing, unless the delay is occasioned by the defendant.

(b) If at any time the court determines that there is not a substantial probability that the defendant will become fit to stand trial or to plead within one year from the date of the original finding of unfitness, or if at the end of one year from that date the court finds the defendant still unfit and for whom no special provisions or assistance can compensate for his disabilities and render him fit, the State shall request the court:

(1) To set the matter for hearing pursuant to Section 104-25 unless a hearing has already been held pursuant to paragraph (a) of this Section; or

(2) To release the defendant from custody and to dismiss with prejudice the charges against him; or

(3) To remand the defendant to the custody of the Department *** and order a [civil commitment] hearing to be conducted pursuant to the provisions of the Mental

-3-

Health and Developmental Disabilities Code [(Mental Health Code) (405 ILCS 5/100 *et seq.* (West 2010))] ***. *** If the defendant is committed to the Department *** pursuant to such hearing, the court having jurisdiction over the criminal matter shall dismiss the charges against the defendant, with the leave to reinstate. *** A defendant who is not committed shall be remanded to the court having jurisdiction of the criminal matter for disposition pursuant to subparagraph (1) or (2) of paragraph (b) of this Section." *Id.*

¶ 5      At the discharge hearing referred to in subsections (a) and (b)(1) of section 104-23 (725 ILCS 5/104-23(a), (b)(1) (West 2010)), the trial court must determine whether there is sufficient evidence to prove beyond a reasonable doubt that the defendant is guilty of a crime. If so, the defendant may be remanded pursuant to section 104-25(d) (725 ILCS 5/104-25(d) (West 2010)) for further treatment, and the treatment period may be extended to a maximum period of 5 years when the crime is first-degree murder; 2 years when the crime is a Class X or Class 1 felony; or 15 months if the crime is a Class 2, 3, or 4 felony. *Id.*

¶ 6      Section 104-25(g)(2) (725 ILCS 5/104-25(g)(2) (West 2010)), which is central to these appeals, provides for the continued commitment of the defendant if he or she remains unfit at the end of the extended treatment period under section 104-25(d). The threshold requirement for commitment under section 104-25(g)(2) is a determination that the defendant "is subject to involuntary admission under the [Mental Health Code] or constitutes a serious threat to the public safety." *Id.* A treatment plan shall be prepared for a defendant committed under this provision and every 90 days the director of the facility in which the defendant has been placed must file with the trial court a written treatment plan report. (The contents of the treatment plan and the treatment plan report will be described below.) Pursuant to section 104-25(g)(2)(i), the trial court must hold a hearing every 180 days to determine whether the defendant is:

"(A) subject to involuntary admission; or

(B) in need of mental health services in the form of inpatient care; or

(C) in need of mental health services but not subject to involuntary admission nor inpatient care." 725 ILCS 5/104-25(g)(2)(i) (West 2010).

Based on its finding, the trial court shall enter "an appropriate order." *Id.*

¶ 7      In 2005, defendant was charged with sex offenses involving children. In October 2007, he was found unfit to stand trial. In December 2009, the trial court conducted a discharge hearing and determined that there was sufficient evidence to sustain convictions of several of the offenses defendant was charged with committing. The court ordered defendant's treatment extended to October 12, 2010. On September 30, 2010, the State filed a motion to commit defendant to the Department, and on February 10, 2011, the court entered an order (1) finding that defendant was subject to involuntary admission and (2) remanding him to the Department until October 12, 2037. The court found that defendant was suffering from a mental illness, specifically, pedophilia.

¶ 8      Defendant was placed in the Elgin Mental Health Center, and the record on appeal

contains two "Fitness Evaluations"[1] prepared by Elgin Mental Health Center personnel. The first fitness evaluation, which was dated May 5, 2011, indicated that defendant's mental status had remained consistent and that he had continued to state that he would not participate in treatment. The evaluation noted that defendant took part in activities such as basketball, walking, weight training, and social events. He also read, watched television, and played video games. Defendant played certain games and watched certain videos that were detrimental to his treatment for pedophilia. Defendant was apparently not inclined to learn about his illness or how to manage it. Although defendant was diagnosed with pedophilia, his treatment team suspected that he also suffered from a personality disorder. However, because defendant would not cooperate with psychological testing, a diagnosis of a personality disorder could not be confirmed.

¶ 9    The second fitness evaluation was dated September 28, 2011. It noted that defendant was discovered to be in possession of "[a]nime cartoon porn" and video and still images of young-looking males (some wearing only underwear) and "young looking characters." The report further indicated that defendant "stopped attending the DBT (Dialectical Behavior Therapy) group, which was the only recommended group he has been willing to attend some of the time" and that defendant "continues to not participate in any treatment for pedophilia."

¶ 10    With reference to defendant's fitness to stand trial, both evaluations stated as follows:

"[Defendant] has an understanding of the roles of court personnel and the court procedures. He can name his charges and understands the possible consequences of these charges. [Defendant] has the capacity to assist with his defense if he chooses. [Defendant] does have a psychiatric diagnosis of Pedophilia which does not interfere with his ability to stand trial.

It is the opinion of the clinical team that [defendant] is Fit to Stand Trial, however the treatment team concedes that it has not provided any new information in this report to overturn previous court rulings that [defendant] is Unfit. If the court is not in agreement with the opinion that he is Fit to Stand trial, [defendant] is subject to involuntary admission based on his diagnosis of Pedophilia and constitutes a serious threat to the public safety."

Both evaluations bear the signature of Richard Malis, a psychiatrist.

¶ 11    On August 1, 2011, the trial court conducted a hearing pursuant to section 104-25(g)(2)(i). Defendant was not present. The trial court indicated that it had received correspondence from defendant indicating that he considered the proceedings a sham and had chosen not to attend. Defendant's attorney was present at the hearing. The trial court invited

---

[1]The fitness evaluations accompanied cover letters from the Department addressed to the trial judge. The May 11, 2011, cover letter referenced a "Progress Report" to which the only attachment was a fitness evaluation, and the October 4, 2011, letter did not reference anything. However, the body of the October 4 letter contained a sentence informing the judge that the Department was filing a "Treatment Plan Report" every 90 days as required by law. The next sentence reads, "Attached is our report." As stated, the only thing attached to the October 4 letter was a fitness evaluation.

defendant's attorney and the prosecutor to "address the fitness question." The prosecutor noted the opinion set forth in the May 5, 2011, fitness evaluation, but advised the court that the State did not seek a finding that defendant was fit. Defendant's attorney stated that "[the Elgin Mental Health Center] has not only provided no new information, but they have provided no treatment to [defendant]," adding that "[h]e remains as ardently delusional as he has ever been."

¶ 12    The State called Malis as a witness. He testified that he had been treating defendant for the preceding 11 months. Malis would see defendant on the unit most days and actually met with defendant at least once a month. Malis testified that defendant was mentally ill and in need of inpatient treatment. According to Malis, defendant would pose a risk of harm to others if released. Following the hearing, the trial court entered a written order finding that defendant was subject to involuntary admission and in need of mental health services in the form of inpatient care.

¶ 13    Another hearing pursuant to section 104-25(g)(2)(i) took place on November 21, 2011. (It is unclear why the trial court scheduled this hearing only roughly four months after the preceding one.) Again, defendant did not attend the hearing. Malis testified again and offered essentially the same opinions he had offered at the August 1, 2011, hearing. The trial court entered a written order finding that defendant remained unfit, was subject to involuntary admission, and was in need of mental health services in the form of inpatient care. Defendant filed separate notices of appeal from the August 1, 2011, and November 21, 2011, orders. We granted defendant's motion to consolidate the appeals.

¶ 14    Defendant first argues that the proceedings below did not conform to the requirements of section 104-25(g)(2) inasmuch as the trial court ruled without the benefit of the treatment plan reports specified in that provision. Section 104-25(g)(2) provides, in pertinent part:

"If the defendant does not have a current treatment plan, then within 3 days of admission under this subdivision (g)(2), a treatment plan shall be prepared for each defendant and entered into his or her record. The plan shall include (i) an assessment of the defendant's treatment needs, (ii) a description of the services recommended for treatment, (iii) the goals of each type of element of service, (iv) an anticipated timetable for the accomplishment of the goals, and (v) a designation of the qualified professional responsible for the implementation of the plan. The plan shall be reviewed and updated as the clinical condition warrants, but not less than every 30 days.

Every 90 days after the initial admission under this subdivision (g)(2), the facility director shall file a typed treatment plan report with the original court having jurisdiction over the defendant. The report shall include an opinion as to whether the defendant is fit to stand trial and whether the defendant is currently subject to involuntary admission, in need of mental health services on an inpatient basis, or in need of mental health services on an outpatient basis. The report shall also summarize the basis for those findings *and provide a current summary of the 5 items required in a treatment plan*. A copy of the report shall be forwarded to the clerk of the court, the State's Attorney, and the defendant's attorney if the defendant is represented by counsel." (Emphasis added.) 725 ILCS 5/104-25(g)(2) (West 2010).

¶ 15    The only reports submitted by personnel of the facility where defendant was receiving treatment were the two fitness evaluations. It does not appear that these evaluations were intended to function as treatment plan reports, and, in our view, they cannot be repurposed to serve that function. Other than indicating that defendant should receive inpatient treatment, neither evaluation assessed his treatment needs in specific terms or described the services defendant should be receiving, the goals of the services, or the time frame for accomplishing those goals as required by section 104-25(g)(2).

¶ 16    The State stresses that defendant's evident refusal to cooperate with the mental health professionals charged with his care made it difficult to design a treatment program. This certainly could be true, but it is mere supposition on the State's part. If a defendant's refusal to cooperate frustrates efforts to develop a treatment program, it is incumbent upon the author of a treatment plan report to say so explicitly, rather than to leave the court to guess whether proper efforts have been made to care for the defendant. The State also argues that Malis's testimony remedied any deficiencies in the evaluations. We disagree. Although Malis testified that defendant was in need of inpatient treatment, his testimony was otherwise focused on defendant's mental condition, not how to treat it.

¶ 17    We recognize that section 104-25(g)(2) provides that the court on its own motion may order a hearing to review a defendant's treatment plan, or that the defendant or the State may request such a hearing, which is separate and apart from the periodic hearings required under section 104-25(g)(2)(i). To be sure, a defendant might request such review in order to challenge deficiencies in the treatment plan and the treatment plan reports. However, even where the defendant fails to seek review of the treatment plan, deficiencies in the treatment plan reports may be raised on appeal from an order pursuant to section 104-25(g)(2)(i). The subject matter of those reports is germane to the issue of whether a defendant is in need of inpatient treatment or can be treated on an outpatient basis. Absent reports that comply with the statute, the trial court will lack the information necessary to make a knowledgeable and, therefore, reliable decision about the appropriate setting in which mental health services should be administered. Moreover, inasmuch as this error fundamentally undermines the fairness of the proceedings, the usual rules for preservation of trial court errors should be relaxed. See generally Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court.").

¶ 18    Although we agree with defendant that the trial court erred in proceeding without the required treatment plan reports, we disagree with defendant's argument that the proceedings were deficient with respect to the issue of his fitness to stand trial. Under the circumstances of this case, the trial court was under no obligation to consider defendant's fitness at the hearings on August 1, 2011, and November 21, 2011. Nothing in section 104-25(g)(2) requires a fitness hearing to be held after the trial court makes the threshold finding necessary to remand the defendant to the Department under that provision. Thereafter, the trial court must conduct hearings every 180 days to determine whether the defendant is subject to involuntary admission or in need of mental health services (in the form of inpatient care or otherwise). These subjects are distinct from the question of whether the defendant is fit to stand trial. See *People v. Lang*, 113 Ill. 2d 407, 440-41 (1986).

¶ 19    The Code specifically provides for the original fitness determination and the threshold fitness determination for commitment under section 104-25(g)(2). Defendant does not challenge either of these determinations. The only other provision of the Code that requires a fitness determination is section 104-20, which provides as follows:

> "(a) Upon entry or continuation of any order to undergo treatment, the court shall set a date for hearing to reexamine the issue of the defendant's fitness not more than 90 days thereafter. In addition, whenever the court receives a report from the supervisor of the defendant's treatment [containing the opinion that the defendant has attained fitness or that there is no substantial probability that he or she will attain fitness within one year of the original finding of unfitness], the court shall forthwith set the matter for a first hearing within 14 days unless good cause is demonstrated why the hearing cannot be held. On the date set or upon conclusion of the matter then pending before it, the court, sitting without a jury, shall conduct a hearing, unless waived by the defense, and shall determine:

> > (1) Whether the defendant is fit to stand trial or to plead; and if not,

> > (2) Whether the defendant is making progress under treatment toward attainment of fitness within one year from the date of the original finding of unfitness.

> (b) If the court finds the defendant to be fit pursuant to this Section, the court shall set the matter for trial; provided that if the defendant is in need of continued care or treatment and the supervisor of the defendant's treatment agrees to continue to provide it, the court may enter any order it deems appropriate for the continued care or treatment of the defendant by the facility or program pending the conclusion of the criminal proceedings.

> (c) If the court finds that the defendant is still unfit but that he is making progress toward attaining fitness, the court may continue or modify its original treatment order entered pursuant to Section 104-17.

> (d) If the court finds that the defendant is still unfit and that he is not making progress toward attaining fitness such that there is not a substantial probability that he will attain fitness within one year from the date of the original finding of unfitness, the court shall proceed pursuant to Section 104-23. However, if the defendant is in need of continued care and treatment and the supervisor of the defendant's treatment agrees to continue to provide it, the court may enter any order it deems appropriate for the continued care or treatment by the facility or program pending the conclusion of the criminal proceedings." 725 ILCS 5/104-20 (West Supp. 2011).

¶ 20    We conclude that this provision ceases to apply during the period of commitment under section 104-25(g)(2). To hold otherwise would lead to absurd results. Commitment under section 104-25(g)(2) occurs at the expiration of an extended treatment term of a maximum of 15 months, 2 years, or 5 years. At that point, it is no longer possible for the defendant to attain fitness within one year following the original finding of unfitness. However, section 104-20(d) (725 ILCS 5/104-20(d) (West Supp. 2011)) provides that, if there is not a substantial probability that the defendant will attain fitness within the one-year period, the trial court shall proceed pursuant to section 104-23, under which the trial court must do one

of three things–hold a discharge hearing, release the defendant and dismiss the charges with prejudice, or order a civil commitment hearing. There is no conceivable reason to require the trial court to take any of these actions after a discharge hearing has already been held, the defendant has not been acquitted, and the defendant has been committed under section 104-25(g)(2).

¶ 21    We next consider whether the failure to conduct a fitness hearing violated defendant's right to due process. In *Lang*, the defendant was found unfit to stand trial for murder. Pursuant to section 104-23(b)(3) of the Code (725 ILCS 5/104-23(b)(3) (West 2010)), the defendant was civilly committed to the Department, and the murder charge was dismissed with leave to reinstate. The trial court periodically reviewed its finding that the defendant was subject to involuntary admission and consistently found that he was. The court did not revisit the question of fitness at the review hearings. Following the seventh review hearing, the defendant's attorneys unsuccessfully petitioned the court for a formal hearing into his fitness to stand trial. Our supreme court held that the petition should have been granted. The *Lang* court reasoned that the dismissal with leave to reinstate did not discharge the defendant or terminate the proceedings against him and that he retained the right to a speedy trial to clear his name. *Lang*, 113 Ill. 2d at 444. The *Lang* court explained that "the guarantee of fundamental fairness inherent in the due process clause requires periodic review of respondent's fitness status, so as to determine if he is fit to stand trial, thereby ensuring that respondent's speedy trial rights are not violated." *Id.*

¶ 22    A key difference between this case and *Lang*, however, is that the defendant in *Lang*–through his attorneys–specifically requested a formal fitness hearing; in this case, defendant's attorney made no such request. Indeed, defendant's attorney concurred with the State that there was no evidence of a change in defendant's condition that would warrant revisiting prior determinations that defendant was unfit to stand trial. The issue in *Lang* was whether the trial court erred in denying the defendant's *request* for a fitness hearing; the supreme court had no occasion to consider whether the trial court had an independent duty, as a matter of due process, to review the defendant's fitness in the absence of such a request. In our view, the due process clause does not impose such a duty on the trial court. We hold that due process is satisfied if the defendant is afforded periodic review of fitness upon request. It is noteworthy that, although section 104-25(g)(2) does not require periodic fitness hearings, it requires the author of the treatment plan report to provide an opinion as to whether the defendant is fit to stand trial. Requiring those responsible for the defendant's treatment to monitor and report on the defendant's fitness helps the defense reach an informed decision whether to seek a fitness hearing.

¶ 23    Our holding comports with the core understanding of due process as affording the right to notice and a meaningful *opportunity* to be heard. *LaChance v. Erickson*, 522 U.S. 262, 266 (1998). Moreover, there is precedent in other settings demonstrating that due process is not violated merely because the individual whose protected interest is at stake must take the initiative in obtaining a hearing. See *People v. Schaefer*, 154 Ill. 2d 250, 255-56 (1993) (right to hearing to rescind statutory summary suspension of driving privileges following an arrest for driving under the influence of alcohol affords due process even though defendant must positively invoke the right by petitioning for rescission).

¶ 24      As further support for our holding, we note that a criminal defendant's interest in clearing his or her name is only one aspect of the defendant's protected liberty interest. The defendant also has an interest in his or her physical liberty. When the evidence of guilt is strong, the defense might place the defendant's physical liberty ahead of the defendant's interest in clearing his or her name. Thus, the defense strategy might focus not on establishing the defendant's fitness and clearing the way for a criminal trial that the defendant would likely lose, but rather on obtaining care for the defendant in the least restrictive setting possible. We can conceive of no reason to hold that one strategy or the other is constitutionally dictated.[2]

¶ 25      For the foregoing reasons, we vacate the orders of the circuit court of Lake County entered on August 1, 2011, and November 21, 2011, and remand for a new hearing pursuant to section 104-25(g)(2)(i).

¶ 26      Vacated and remanded with directions.

---

[2]Lurking in the background of this discussion are potentially thorny questions concerning who decides what strategy to pursue. Does the decision belong to the defendant or to his or her attorney? If the attorney believes that the defendant is fit and the defendant expresses a desire to clear his or her name, it would seem that the attorney should respect the defendant's wishes. The situation is more problematic when the attorney believes that the defendant's expressed desire to proceed to trial and clear his or her name is the product of the disability that is rendering the defendant unfit. Scholars have noted the difficulty of allocating decision-making authority in cases where the defendant's fitness is in doubt. See Rodney J. Uphoff, *The Role of the Criminal Defense Lawyer in Representing the Mentally Impaired Defendant: Zealous Advocate or Officer of the Court*, 1988 Wis. L. Rev. 65. Although these questions are well outside the scope of the issues in these appeals, as framed by the parties, they might become pertinent in future proceedings in the trial court.