2015 IL App (2d) 140955
No. 2-14-0955
Opinion filed June 26, 2015

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
|     Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 05-CF-3046 |
| PAUL OLSSON, | ) ) ) | Honorable Christopher R. Stride, |
|     Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE ZENOFF delivered the judgment of the court, with opinion.
Justices Hutchinson and Spence concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, Paul Olsson, appeals from an order following a hearing, which he refused to attend, conducted pursuant to sections 104-25(g)(2) and 104-25(g)(2)(i) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/104-25(g)(2), (g)(2)(i) (West 2012)).   Defendant argues that the court improperly waived his presence at the hearing by determining that an affidavit submitted by a treating psychiatrist complied with section 104-16(c) of the Code (725 ILCS 5/104-16(c) (West 2012)).   He also contends that the court erred when it failed to require the Department of Human Services' (Department's) treatment staff to transport him to court and conducted the hearing over defense counsel's objection.   For the reasons that follow, we affirm.

¶ 2                       I. BACKGROUND

¶ 3    We outlined the procedural history of this case in *People v. Olsson*, 2011 IL App (2d) 091351, ¶ 2, and *People v. Olsson*, 2012 IL App (2d) 110856, ¶ 7.   By way of background, defendant was charged with sex offenses involving children and was found unfit to stand trial. Following a discharge hearing (see 725 ILCS 5/104-25(a) (West 2012)), the court found defendant "not not guilty" of several of the charged offenses and ordered an extended period of treatment (see 725 ILCS 5/104-25(d) (West 2012)).   At the expiration of that extended treatment period, the court remanded defendant to the Department for further treatment pursuant to section 104-25(g)(2) of the Code, "which provides for the potentially long-term commitment of a criminal defendant who has been found unfit to stand trial and for whom treatment to attain fitness has been unsuccessful."   *Olsson*, 2012 IL App (2d) 110856, ¶ 1.

¶ 4    During the section 104-25(g)(2) period of treatment, defendant's facility director must file a typed treatment plan report with the court every 90 days.   725 ILCS 5/104-25(g)(2) (West 2012).   The statute permits the court to order a hearing on its own motion to review the treatment plan. 725 ILCS 5/104-25(g)(2) (West 2012).   Additionally, the court must set a hearing every 180 days to make a finding as to whether defendant is "(A) subject to involuntary admission; or (B) in need of mental health services in the form of inpatient care; or (C) in need of mental health services but not subject to involuntary admission nor inpatient care."   725 ILCS 5/104-25(g)(2)(i) (West 2012); see also *Olsson*, 2012 IL App (2d) 110856, ¶¶ 6, 17.   Although the court and the parties routinely refer to these proceedings as "(g)(2) hearings," it is more accurate to say that, every 90 days, the court has elected to both review the sufficiency of defendant's treatment plan on its own motion and hold section 104-25(g)(2)(i) hearings.

¶ 5    In a treatment plan report dated July 25, 2014, the Department opined that defendant was fit to stand trial.   Alternatively, the Department believed that defendant was "subject to

involuntary admission based on his diagnosis of Pedophilia and constitute[d] a serious threat to the public safety." The Department has consistently expressed this opinion. See *Olsson*, 2012 IL App (2d) 110856, ¶ 10. The July 2014 report noted that defendant "declines to explain what specific issues prevent him from being able to assist his attorney but seems to feel that assisting his attorney would not be in his best interest." According to the report, defendant "is fully able to discuss fitness related issues and terms on a rational and coherent level, so long as the counselor does not attempt to go into the specific aspects of [his] current charges." The Department believed that defendant's "refusal to work with his attorney appears to be a deliberate attempt to remain Unfit and a legal strategy designed to serve as much of any possible sentence at Elgin [Mental Health Center], as opposed to prison."

¶ 6    On August 4, 2014, the court conducted a treatment plan review and held a hearing pursuant to section 104-25(g)(2)(i). Defendant was not present, even though the court had previously granted the State's petition for a writ directing the Department to bring him to the hearing. The State submitted to the court the affidavit of defendant's treating psychiatrist, Dr. Richard Malis. In his affidavit, Dr. Malis stated the following. Defendant had refused to attend hearings since October 2011. On August 1, 2014, Dr. Malis met with defendant and asked whether he was willing to be transported to court on August 4. Defendant responded that he did not plan to go to court, indicating that he had no main reason for declining to attend and that his reasons were the same as in the past. Dr. Malis noted in his affidavit that defendant had previously stated that motion sickness was one of the reasons why he did not want to be transported. When Dr. Malis asked defendant whether this was the reason he was refusing to attend court, defendant said that it was one factor, but not the main factor. Dr. Malis then asked defendant whether he was willing to take medication to alleviate his motion sickness.

Defendant responded that he would take the medication if he were physically forced to attend. Dr. Malis noted that defendant had previously indicated that he thought that the hearings were a sham. Dr. Malis asked defendant whether this was the reason he refused to attend court, and he once again said that it was one factor, but not the main factor. Defendant told Dr. Malis that he would not struggle if force were used to bring him to court, but he said that he would go under verbal protest. Dr. Malis could not confirm that a medical condition prevented defendant from being transported to court, despite what defendant had expressed to him.

¶ 7 The State requested to proceed in defendant's absence, asserting that Dr. Malis's affidavit was filed pursuant to section 104-16 of the Code, which provides the procedure for waiving a defendant's right to be present at hearings "on the issue of his fitness." 725 ILCS 5/104-16(c) (West 2012). The assistant public defender who represented defendant objected on the basis that the affidavit did not "meet the criteria set forth in the statute," presumably section 104-16(c). Specifically, defense counsel argued that defendant was "just choosing not to be here," which counsel did not believe was a proper ground under the statute to waive defendant's presence. Defense counsel objected to proceeding in defendant's absence and moved to continue the matter until he was present.

¶ 8 After reviewing Dr. Malis's affidavit, the court stated: "And again, my position is the same. I'm not going to require the Department of Human Services to lay hands on Mr. Olsson, put him in restraints and force him to attend the hearing. He's got a right to attend. I'm going to find that the State has satisfied section 725 ILCS 5/104-16(c), and I'm going to waive Mr. Olsson's presence."

¶ 9 Dr. Malis was the only witness at the hearing. He testified that defendant was mentally ill and had been diagnosed with pedophilia. Defendant had never been treated for pedophilia, a

factor that Dr. Malis believed increased defendant's risk of recidivism. Dr. Malis opined that defendant required inpatient treatment and was "reasonably expected to inflict serious physical harm upon others in the near future if he was released." On cross-examination, Dr. Malis explained that the reason why defendant was not being treated for pedophilia was that "he refuses to cooperate with evaluation and treatment." On examination by the court, Dr. Malis outlined what defendant's treatment would be if he were to avail himself of treatment. Dr. Malis testified that certain aspects of treatment could not be completed without defendant's cooperation.

¶ 10    At the conclusion of the evidence, the court expressed its frustration that defendant was "going to be stuck in this position" until he acquiesced to being treated. The court encouraged the Department to revisit the "description of services recommended for treatment," but noted that the treatment plan complied with statutory requirements. In its oral ruling, the court declined to make a finding as to whether defendant remained unfit to stand trial, stating: "He doesn't raise fitness, whether or not he's fit, so I'm really not in a position to address that piece of it." However, the written order, which the court had used in the past, provided, in relevant part: "[T]he defendant, as evidenced in the Treatment Plan Report and by direct testimony, has not availed himself of fitness restoration treatment and *** as a result, the evidence does not establish by a preponderance of the evidence that the [defendant] has become fit." The court remanded defendant to the Department for further treatment and set another hearing in 90 days "in the hope that at some point [defendant] decides to avail himself of treatment."

¶ 11    Defendant timely appealed, and appellate counsel was appointed.

¶ 12                                    II. ANALYSIS

¶ 13    Defendant argues that the trial court improperly determined that Dr. Malis's affidavit complied with section 104-16(c) of the Code.    He also argues that the court erred when it failed to require the Department's treatment staff to transport him to court and conducted the hearing over defense counsel's objection.

¶ 14    As an initial matter, the State contends that this appeal is moot but proposes that several exceptions to the mootness doctrine apply.    "The test for mootness is whether the issues involved in the trial court no longer exist because intervening events have rendered it impossible for the reviewing court to grant effectual relief to the complaining party."    *In re James W.*, 2014 IL 114483, ¶ 19.    We disagree that we cannot grant effectual relief to defendant.    In *Olsson*, 2012 IL App (2d) 110856, ¶¶ 18, 25, we held that it was error for the trial court to proceed with section 104-25(g)(2)(i) hearings without proper treatment plan reports, and we remanded for a new hearing.    If, as defendant claims, Dr. Malis's affidavit did not meet statutory requirements, the appropriate relief would be to remand for a new hearing, as we have done in the past.    See *People v. Peterson*, 404 Ill. App. 3d 145, 149-50 (2010) (in an appeal following a discharge hearing, the matter was not moot, because the record did not foreclose the possibility that the defendant had subsequently been committed pursuant to section 104-25(g)(2), and "[t]he matter could not be moot while he remained committed").

¶ 15    We now turn to the merits of the appeal.    Defendant first argues that Dr. Malis's affidavit did not comply with section 104-16(c) of the Code, which provides:

　　　"The defendant has the right to be present at every hearing on the issue of his fitness.    The

　　　　defendant's presence may be waived only if there is filed with the court a certificate stating

　　　　　that the defendant is physically unable to be present and the reasons therefor.    The

certificate shall be signed by a licensed physician who, within 7 days, has examined the defendant." 725 ILCS 5/104-16(c) (West 2012).

According to defendant, the affidavit at issue established not that he was "physically unable" to attend the hearing, but merely that he did not want to attend.

¶ 16    Defendant takes for granted that section 104-16(c), which is part of a section entitled "Fitness Hearing" (725 ILCS 5/104-16 (West 2012)), applied to the proceedings at issue. However, as we explain below, because the August 4, 2014, hearing was not a hearing on the issue of fitness, section 104-16(c) did not apply.

¶ 17    Because the resolution of this appeal requires us to interpret several statutes, our review is *de novo*. *People v. Stahl*, 2014 IL 115804, ¶ 25.    "The primary objective in construing a statute is to give effect to the intention of the legislature," and "[t]he best indication of this intent are the words of the statute." *People v. Waid*, 221 Ill. 2d 464, 473 (2006).   We review the trial court's judgment rather than its reasoning, and we may affirm on any basis supported by the record.   *In re Commitment of Tittelbach*, 2015 IL App (2d) 140392, ¶ 23.

¶ 18    In *Olsson*, 2012 IL App (2d) 110856, ¶¶ 2-6, we provided an overview of some of the Code's provisions concerning fitness to stand trial.   In short, before a defendant may be remanded to the Department pursuant to section 104-25(g)(2), he or she must have been found unfit to stand trial (see 725 ILCS 5/104-16(d) (West 2012)); been found "not not guilty" of one or more charges at an innocence-only discharge hearing (see 725 ILCS 5/104-25(a) (West 2012); *Waid*, 221 Ill. 2d at 478); undergone an extended period of treatment pursuant to section 104-25(d); remained unfit at the expiration of that extended treatment period; and ultimately been found to be "subject to involuntary admission under the Mental Health and Developmental

Disabilities Code" (Mental Health Code) (405 ILCS 5/1-100 *et seq.* (West 2012)) or to "constitute[] a serious threat to the public safety" (725 ILCS 5/104-25(g)(2) (West 2012)).

¶ 19    Once a defendant is remanded to the Department pursuant to section 104-25(g)(2) for a period up to "the maximum sentence to which the defendant would have been subject had he or she been convicted in a criminal proceeding" (725 ILCS 5/104-25(g)(2) (West 2012); see also 725 ILCS 5/104-25(g)(4) (West 2012)), the court must hold hearings pursuant to section 104-25(g)(2)(i), which provides:

"180 days after a defendant is remanded to the Department ***, under paragraph (2), and every 180 days thereafter for so long as the defendant is confined under the order entered thereunder, the court shall set a hearing and shall direct that notice of the time and place of the hearing be served upon the defendant, the facility director, the State's Attorney, and the defendant's attorney.  If requested by either the State or the defense or if the court determines that it is appropriate, an impartial examination of the defendant by a psychiatrist or clinical psychologist as defined in Section 1-103 of the [Mental Health Code] who is not in the employ of the Department *** shall be ordered, and the report considered at the time of the hearing.  If the defendant is not currently represented by counsel the court shall appoint the public defender to represent the defendant at the hearing.  The court shall make a finding as to whether the defendant is:

(A) subject to involuntary admission; or

(B) in need of mental health services in the form of inpatient care; or

(C) in need of mental health services but not subject to involuntary admission nor inpatient care.

The findings of the court shall be established by clear and convincing evidence and the burden of proof and the burden of going forward with the evidence shall rest with the State's Attorney. Upon finding by the court, the court shall enter its findings and an appropriate order." 725 ILCS 5/104-25(g)(2)(i) (West 2012).

The subjects to be addressed at section 104-25(g)(2)(i) hearings "are distinct from the question of whether the defendant is fit to stand trial." *Olsson*, 2012 IL App (2d) 110856, ¶ 18.

¶ 20 Article 104 of the Code also provides for a second type of hearing during the section 104-25(g)(2) period of treatment. Every 90 days, the facility director must file a typed treatment plan report containing, among other things, "an opinion as to whether the defendant is fit to stand trial." 725 ILCS 5/104-25(g)(2) (West 2012). This court has observed that "[r]equiring those responsible for the defendant's treatment to monitor and report on the defendant's fitness helps the defense reach an informed decision whether to seek a fitness hearing." *Olsson*, 2012 IL App (2d) 110856, ¶ 22. The State or the defendant may request a review of the treatment plan every 90 days "to determine whether the plan complies with" statutory requirements. 725 ILCS 5/104-25(g)(2) (West 2012). The trial court may also order a hearing on its own motion to review the treatment plan. 725 ILCS 5/104-25(g)(2) (West 2012). As noted above, every 90 days, the trial court in the present case reviews the sufficiency of defendant's treatment plan and holds hearings pursuant to section 104-25(g)(2)(i).

¶ 21 In *Olsson*, we explained that "[n]othing in section 104-25(g)(2) requires a fitness hearing to be held after the trial court makes the threshold finding necessary to remand the defendant to the Department under that provision." *Olsson*, 2012 IL App (2d) 110856, ¶ 18. We held that, in the absence of a request for a fitness hearing, the trial court did not have "an independent duty, as a matter of due process, to review the defendant's fitness." *Olsson*, 2012 IL App (2d)

110856, ¶ 22.    Instead, during the section 104-25(g)(2) period, "due process is satisfied if the defendant is afforded periodic review of fitness upon request."[1] *Olsson*, 2012 IL App (2d) 110856, ¶ 22.    To that end, we noted that, where the evidence of guilt is strong, the defense might pursue a strategy geared toward obtaining care in the least restrictive setting rather than seeking to establish fitness and "clearing the way for a criminal trial that the defendant would likely lose."    *Olsson*, 2012 IL App (2d) 110856, ¶ 24.

¶ 22    According to the plain language of the statute, section 104-16(c), which pertains to a defendant's "right to be present at every hearing on the issue of his fitness" (725 ILCS 5/104-16(c) (West 2012)), applies only to fitness hearings.    As explained above, treatment plan reviews during the section 104-25(g)(2) period of treatment and hearings conducted pursuant to section 104-25(g)(2)(i) are not fitness hearings.    Therefore, we hold that section 104-16(c) does not apply to such proceedings.[2]

¶ 23    The trial court in the present case did not conduct a hearing on the issue of fitness on August 4, 2014.    Indeed, the court stated on the record that it was "not in a position to address" fitness.    We recognize that the written order indicated that defendant "has not availed himself of fitness restoration treatment and *** as a result, the evidence does not establish by a preponderance of the evidence that the [defendant] has become fit."    Nevertheless, neither

---

[1] Interestingly, nothing in Article 104 of the Code appears to *prohibit* the trial court from raising the issue of fitness on its own initiative during the section 104-25(g)(2) period and setting the matter for hearing on the issue of fitness.

[2] We previously reached this conclusion in an unpublished disposition of one of defendant's prior appeals.    See *People v. Olsson*, 2013 IL App (2d) 121418-U, ¶ 11 (summary order).

defendant nor the State requested a fitness hearing, and the court did not set the matter for such a hearing. Instead, the purpose of the hearing was to review defendant's treatment plan and to determine whether he was "subject to involuntary admission," "in need of mental health services in the form of inpatient care," or "in need of mental health services but not subject to involuntary admission nor inpatient care." 725 ILCS 5/104-25(g)(2)(i) (West 2012); see also *In re William H.*, 407 Ill. App. 3d 858, 866 (2011) (where oral ruling conflicts with written judgment, oral ruling controls). It appears that the trial court has been using a form order that is not specifically tailored to section 104-25(g)(2)(i) hearings and treatment plan reviews, but rather more closely resembles an initial commitment order pursuant to section 104-25(g)(2). We recently addressed that problem in a nonprecedential order (*People v. Olsson*, 2014 IL App (2d) 140635-U, ¶¶ 18, 21), but the trial court's August 4, 2014, order preceded our disposition of that appeal. In any event, the August 4, 2014, hearing was not a "hearing on the issue of [defendant's] fitness" within the meaning of section 104-16(c), and Dr. Malis's affidavit did not have to comply with that provision.

¶ 24    We stress that we do not dispute that defendant had a right to attend the hearing. However, defendant rejected the court's attempts to facilitate his attendance. That distinguishes the matter from *People v. Williams*, 312 Ill. App. 3d 232 (2000), in which the defendant was denied the *opportunity* to be present at a discharge hearing. *Williams*, 312 Ill. App. 3d at 235. The court in that case noted that, "[a]lthough the discharge hearing statute does not specify whether a defendant has the right to be present, Illinois courts have permitted defendants to be present [citation] and testify [citation] at discharge hearings." *Williams*, 312 Ill. App. 3d at 234-35.

¶ 25    Defendant's other argument is that the trial court erred when it failed to require the Department's treatment staff to transport him to court and conducted the hearing over defense counsel's objection.    Defendant again incorrectly assumes that his appearance at the hearing could be waived only pursuant to section 104-16(c).    Additionally, he proposes that, by virtue of his unfitness, he was "legally incompetent of making legal decisions on his own," so it was for his counsel to decide whether it was necessary and in his best interests to appear in court.    He insists that the court should not have overridden his counsel's request that he be brought to court simply because he did not want to attend or because he believed that the proceedings were a sham. Defendant frames this as a question of whether an unfit individual, as opposed to his or her counsel, should have the ultimate authority to make litigation decisions.

¶ 26    Defendant has forfeited this argument by failing to raise it below.    See *People v. Cruz*, 2013 IL 113399, ¶ 20 ("Generally, an issue not raised in the trial court is forfeited on appeal.").    In the trial court, the only basis for the motion for a continuance was defense counsel's incorrect belief that section 104-16(c) applied.    See *In re Commitment of Hooker*, 2012 IL App (2d) 101007, ¶ 54 (objection made on specific grounds forfeits all other grounds).    Further, defendant does not offer any reason for us to overlook the forfeiture.    Therefore, we decline to address defendant's second argument, which would require us to consider, in the abstract, the appropriate balance of decision-making authority between an unfit defendant and his or her attorney during a section 104-25(g)(2) period of treatment.

¶ 27    Finally, we note that the State argues for the first time on appeal that section 3-806 of the Mental Health Code (405 ILCS 5/3-806 (West 2012)) applied to the proceedings at issue.    That statute provides:

"(a) The respondent shall be present at any hearing held under this Act unless his attorney waives his right to be present and the court is satisfied by a clear showing that the respondent's attendance would subject him to substantial risk of serious physical or emotional harm.

(b) The court shall make reasonable accommodation of any request by the recipient's attorney concerning the location of the hearing. If the recipient's attorney advises the court that the recipient refuses to attend, the hearing may proceed in his or her absence.

(c) No inference may be drawn from the recipient's non-attendance pursuant to either subsection (a) or (b) of this Section." 405 ILCS 5/3-806 (West 2012).

Having rejected defendant's specific contentions, we need not address the State's argument on this point.

¶ 28                                    III. CONCLUSION

¶ 29    The judgment of the circuit court of Lake County is affirmed.

¶ 30    Affirmed.