2016 IL App (2d) 150874
No. 2-15-0874
Opinion filed March 14, 2016

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) | Nos. 05-CF-3046 05-CF-3629 |
| PAUL OLSSON, | ) ) | Honorable Christopher R. Stride, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE ZENOFF delivered the judgment of the court, with opinion.
Justices Hutchinson and Spence concurred in the judgment and opinion.

**OPINION**

¶ 1   Defendant, Paul Olsson, appeals from an order entered by the circuit court of Lake County on July 23, 2015, remanding him to the Department of Human Services (Department) after a hearing pursuant to section 104-25(g)(2)(i) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/104-25(g)(2)(i) (West 2014)).  For the reasons that follow, we affirm.

¶ 2                              I. BACKGROUND

¶ 3   In 2005, defendant was charged with sex offenses involving children and was later found unfit to stand trial.  Following a discharge hearing (see 725 ILCS 5/104-25(a) (West 2014)), the court found defendant "not not guilty" of several of the charged offenses, including predatory

criminal sexual assault of a child (720 ILCS 5/12-14.1(a)(1) (West 2008)) and aggravated criminal sexual abuse (720 ILCS 5/12-16 (West 2008)), and ordered an extended period of treatment (see 725 ILCS 5/104-25(d) (West 2014)). At the expiration of that extended treatment period, the court remanded defendant to the Department for further treatment pursuant to section 104-25(g)(2) of the Code. Section 104-25(g)(2) "provides for the potentially long-term commitment of a criminal defendant who has been found unfit to stand trial and for whom treatment to attain fitness has been unsuccessful." *People v. Olsson*, 2012 IL App (2d) 110856, ¶ 1.

¶ 4     During the section 104-25(g)(2) period of treatment, the facility director must file a typed treatment plan report with the court every 90 days. 725 ILCS 5/104-25(g)(2) (West 2014). The parties may request a review of the treatment plan or the court may order such a review on its own motion. 725 ILCS 5/104-25(g)(2) (West 2014). The court must, however, hold a hearing every 180 days to make a finding as to whether the defendant is "(A) subject to involuntary admission; or (B) in need of mental health services in the form of inpatient care; or (C) in need of mental health services but not subject to involuntary admission nor inpatient care." 725 ILCS 5/104-25(g)(2)(i) (West 2014).

¶ 5     On July 16, 2015, the trial court conducted a hearing in defendant's case pursuant to section 104-25(g)(2)(i) of the Code. Defendant was not present. According to the affidavit of defendant's treating psychiatrist, Dr. Usha Kumari Kartan, defendant refused to attend the hearing. Over defense counsel's objection, the hearing proceeded in defendant's absence.

¶ 6     Dr. Kartan was the only witness who testified. Without objection from defense counsel, the court found Dr. Kartan to be an expert in psychiatry and forensic psychiatry. Although defendant had resided at the Elgin Mental Health Center since approximately the summer of

2010, he had been only recently assigned to Dr. Kartan. Prior to April 2015, Dr. Richard Malis was defendant's treating psychiatrist. Dr. Kartan testified that she met with defendant two or three times per week until she "was able to get information to her satisfaction." However, according to Dr. Kartan, information has been coming in piece-by-piece, as defendant is not cooperating with treatment. Aside from these meetings, she also observes defendant on the unit several times daily. When she became defendant's treating psychiatrist, she reviewed his chart, which contains evaluations from the past five years.

¶ 7    Dr. Kartan testified that she was aware of sex crimes that defendant had committed against several individuals in 2004 and 2005. She opined that defendant is mentally ill and has "several disorders." The first is pedophilic disorder, and the second is depressive disorder, not otherwise specified. There is also "suspected malingering." According to Dr. Kartan, defendant "falls into textbook description of pedophilic disorder" and "definitely is in need of continued inpatient treatment." She explained that defendant is uncooperative and disputes his diagnosis of pedophilic disorder. Instead, he "considers himself [as] being depressed or having an anxiety disorder." In her opinion, defendant poses a danger to public safety "because this illness has not been treated."

¶ 8    On cross-examination, Dr. Kartan testified that she wants to rule out malingering. Defendant had been diagnosed with pedophilic disorder by Dr. Malis, and she agreed with the diagnosis. She acknowledged that it was "a suspected possibility" that defendant was "malingering as to the diagnosis of pedophilia," and malingering was a rule-out diagnosis. Dr. Kartan explained that defendant is willing to take certain medications, including Abilify (an antipsychotic and antidepressant), which he took briefly in April 2015. Defendant is also taking Wellbutrin and Lorazepam. According to Dr. Kartan, defendant has a "negative attitude towards

Dr. Malis because he is a male figure and *** an authority figure." Defendant is "much more comfortable working with woman [*sic*]." Nevertheless, although she would meet with defendant for "hours at times," he "has been uncooperative from the very start" and "selective in reporting." Defendant "is not cooperative with treatment" or her efforts to evaluate him. Dr. Kartan testified that defendant is "afraid to come to court" and "afraid of the label that has been enforced [*sic*] on him." She acknowledged that treatment is at a standstill because defendant's acknowledgment of his symptoms is necessary for proper treatment. According to Dr. Kartan, a patient must be willing to get well and take the lead. No plan can be effective unless the patient wants help and collaborates for that change.

¶ 9     In his closing argument, defense counsel asserted that the evidence showed that there was "a very real possibility that [defendant] is misrepresenting his symptomatology in such a way that skews" the pedophilia diagnosis. The court then asked defense counsel what the Elgin Mental Health Center should do with a young man who "does nothing to avail himself of any kind of treatment." Defense counsel responded: "Treat him." When asked how that could be done, defense counsel replied: "With the state-of-the-art medical training that they have received. With the psychiatric knowledge that you [the judge] and I both lack." During the ensuing colloquy between the court and defense counsel, counsel mentioned that he did not think that defendant's treatment team could determine that he suffered from pedophilia, given that "they are not even sure if he is malingering or not." According to defense counsel, the treatment team is not treating defendant and never would. The court continued the matter to July 23, 2015, for ruling.

¶ 10    On July 23, 2015, the court remanded defendant to the Department for further treatment, finding that he "continues to have some serious threat to public safety." Defense counsel then

raised the issue of malingering again. The court asked defense counsel whether he wanted the court to direct the Department to evaluate defendant for malingering. Defense counsel responded that "some analysis of that should be done," given that there was a question as to the validity of the pedophilia diagnosis. After a continued colloquy, the court indicated that it would order the Department to evaluate defendant for malingering if defense counsel so requested. Defense counsel replied, in relevant portion, that there was some confusion as to defendant's diagnosis that needed to be cleared up, and "[i]f the court is going to do that by conducting a malingering evaluation *** then so be it."

¶ 11    The court added the following language to its written order:

> "DHS shall conduct an examination to determine if Mr. Olsson is malingering with respect to any diagnosis made by any physician that has treated Mr. Olsson while in the care and custody of the DHS. The results of that examination shall be made available to the parties within 30 days of the entry of this order."

The court set a date in September 2015 for status on the Department's efforts to determine whether defendant is malingering. Additionally, the court set a date in January 2016 for review of the treatment plan and a hearing pursuant to section 104-25(g)(2)(i) of the Code.

¶ 12    Defendant filed a timely *pro se* notice of appeal, and appellate counsel (the same attorney who represented him in the trial court) was appointed on his behalf.

¶ 13                                II. ANALYSIS

¶ 14    As an initial matter, the State contends that the case is moot because the 180-day treatment period authorized by the July 23, 2015, order has expired and because the next scheduled review hearing has already occurred. We reject this argument, as we have every time the State has raised it. So long as defendant remains committed pursuant to section 104-25(g)(2)

of the Code, the mere passage of time does not render his appeals moot. See *People v. Olsson*, 2015 IL App (2d) 140955, ¶ 14; *People v. Peterson,* 404 Ill. App. 3d 145, 149-50 (2010) (in an appeal following a discharge hearing, the matter was not moot, because the record did not foreclose the possibility that the defendant had subsequently been committed pursuant to section 104-25(g)(2) of the Code, and "[t]he matter could not be moot while he remained committed").

¶ 15    As another preliminary matter, during the briefing of this appeal, the State moved to strike numerous argumentative portions of defendant's statement of facts. We ordered the motion to be taken with the case. Illinois Supreme Court Rule 341(h)(6) (eff. Jan. 1, 2016) provides, in relevant portion, that a statement of facts "shall contain the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment." We may strike a statement of facts when our review is hindered by improprieties. *Hall v. Naper Gold Hospitality LLC*, 2012 IL App (2d) 111151, ¶ 9. However, if the improprieties do not rise to the level of warranting sanctions, we may elect to simply ignore the offending statements. See *Quigg v. Walgreen Co.*, 388 Ill. App. 3d 696, 698-99 (2009). In the present case, defendant's statement of facts is indeed blatantly argumentative. Nevertheless, due to our unique familiarity with defendant's case owing to his frequent appeals, the improprieties do not affect our review. Therefore, we will simply disregard the improper argumentation and commentary. We advise counsel to be mindful in the preparation of future briefs to comply with all appellate rules.

¶ 16    As a final preliminary matter, we must clarify the scope of our jurisdiction. See *In re Marriage of Alyassir*, 335 Ill. App. 3d 998, 999 (2003) (the appellate court has an independent duty to consider its jurisdiction). Defendant appears to question the sufficiency of all of the treatment plan reports that the Department has ever filed in his case. However, each order following a section 104-25(g)(2)(i) hearing is separately appealable, along with the

accompanying treatment plan reports at issue. See *Olsson*, 2012 IL App (2d) 110856, ¶ 17 ("[E]ven where the defendant fails to seek review of the treatment plan, deficiencies in the treatment plan reports may be raised on appeal from an order pursuant to section 104-25(g)(2)(i)."). Indeed, defendant has appealed most, if not all, orders following review hearings during his section 104-25(g)(2) period of treatment. Accordingly, the only matters that are properly before us are the July 23, 2015, order remanding defendant to the Department for further treatment and the accompanying treatment plan report dated June 23, 2015.

¶ 17　Turning to defendant's arguments, he first contends that the court violated his due process rights by "finding repeatedly that the purported treatment plans formulated and filed by the Elgin Mental Health Center complied with state law." According to defendant, there have been two constants in his interaction with his treatment team—his own "intractable opposition to treatment" and the Elgin Mental Health Center's "unwillingness to consider alternative treatment modalities to overcome that opposition." He complains that "there is no evidence that the [Elgin Mental Health Center] treatment team has ever even considered assessing [his] capacity to self-determine his course of treatment." Additionally, noting that defense counsel is held to the standard of reasonable legal representation articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), defendant proposes that "[i]t is inconceivable that [his] treatment team not also be held to some standard of reasonable practice." Defendant submits that the question of "whether the years of repeated refusal to consider [his] capacity to refuse treatment *** constitutes a due process violation *** is not the same as was before this Court" in *Olsson*, 2012 IL App (2d) 110856. Specifically, defendant argues, the question at issue in our 2012 opinion involved his "single refusal" to participate in treatment, while the present appeal involves his "long-standing and entrenched refusal."

¶ 18    Defendant brazenly attempts to blame the treatment staff at the Elgin Mental Health Center for failing to treat him even though he has thwarted their efforts at every turn.  The absurdity of his argument is highlighted by his request in his prayer for relief for us to "require that the treatment plan actually formulate a strategy to address continued refusal and consider assisted or involuntary treatment if necessary."  Dr. Kartan made clear that there is simply no way to treat a pedophile who is unwilling to acknowledge his problems and collaborate with his treatment team.  Defendant introduced no evidence to the contrary.  Instead, defense counsel flippantly demanded that the treatment team somehow use its "state-of-the-art medical training" to find a way to treat him.  The fitness statutes do not require the Elgin Mental Health Center to do the impossible; nor does due process demand as much.  Indeed, the legislature has expressly acknowledged that some sex offenders cannot be successfully treated.  See 20 ILCS 4026/5 (West 2014) ("The General Assembly recognizes that some sex offenders cannot or will not respond to counseling and that, in creating the program described in this [Sex Offender Management Board] Act, the General Assembly does not intend to imply that all sex offenders can be successful in treatment.").

¶ 19    Defendant's complaint of his lack of treatment is as insincere as the argument rejected in *In re David B.*, 367 Ill. App. 3d 1058 (2006).  In that case, the respondent, who had been convicted in 1981 of three counts of indecent liberties with a child, was repeatedly subjected to involuntary confinement from 1986 through 2005.  *David B.*, 367 Ill. App. 3d at 1059-60.  At a recommitment hearing in June 2005, a licensed clinical social worker testified that she was unable to personally examine the respondent, because he refused to speak with her.  *David B.*, 367 Ill. App. 3d at 1063.  However, she testified regarding the respondent's "long history of diagnosed mental illness" reflected in his medical records and opined that he would cease taking

his medication and would pose a threat to himself and others if he were released. *David B.*, 367 Ill. App. 3d at 1063-64. On appeal from the court's order finding him to be subject to involuntary admission, the respondent complained that, in violation of section 3-807 of the Mental Health and Developmental Disabilities Code (405 ILCS 5/3-807 (West 2000)), the social worker who testified at the hearing had not examined him. *David B.*, 367 Ill. App. 3d at 1064. Recognizing that the respondent was attempting to game the system, the court held that "the statutory language requiring an evaluation from a competent expert was not intended to create a loophole for a sexually dangerous person to exploit." *David B.*, 367 Ill. App. 3d at 1065. The court reasoned that "[i]t would be an absurd result to allow a dangerous pedophile, who has become sophisticated in litigation through long experience with commitment proceedings, to free himself by simply refusing to discuss his pedophilia with anyone defined in the statute as competent to testify at a commitment proceeding." *David B.*, 367 Ill. App. 3d at 1068. The same logic applies in the present case. Defendant should not be heard to complain of his lack of treatment when he steadfastly refuses to cooperate with his treatment staff.

¶ 20  Furthermore, we have previously spelled out exactly what defendant's treatment plan report must say if defendant is unwilling to accept treatment. In *Olsson*, 2012 IL App (2d) 110856, ¶ 16, we explained that "[i]f a defendant's refusal to cooperate frustrates efforts to develop a treatment program, it is incumbent upon the author of a treatment plan report to say so explicitly, rather than to leave the court to guess whether proper efforts have been made to care for the defendant." We subsequently held that one of defendant's treatment plan reports was legally sufficient where it "addressed all of the statutory factors" and "clearly stated that the Department was not able to provide a plan because defendant was unwilling to cooperate." *People v. Olsson*, 2014 IL App (2d) 131217, ¶ 15. Defendant offers no reason for us to depart

from our holdings in those cases. Accordingly, where a treatment plan report makes clear that the defendant cannot be treated due to his failure to cooperate, we emphatically reject the notion that the defendant may use his own recalcitrance as a sword to challenge the legality of his commitment.

¶ 21 Defendant next argues that the trial court "improperly extended [his] ongoing detention *** without a proper diagnosis of underlying mental illness to support that ruling." Specifically, he questions the validity of his diagnosis (presumably, the pedophilia diagnosis) in light of the fact that there are questions as to whether he is malingering. According to defendant, "[s]o long as this 'rule-out' question remains, it is possible that a differential diagnosis will reveal that [he] does not suffer from the questioned mental illness of pedophilia," which "would negate the legal grounds on which he is currently being detained."

¶ 22 Defendant has forfeited these contentions by failing to cite authority and by failing to present a developed argument. Indeed, this entire section of his brief consists of six sentences. Illinois Supreme Court Rule 341(h)(7) (eff. Jan. 1, 2016) requires an appellant's argument to be supported by citations to authority. See *Hall*, 2012 IL App (2d) 111151, ¶ 13 (" 'The appellate court is not a depository into which a party may dump the burden of research.' " (quoting *People v. O'Malley*, 356 Ill. App. 3d 1038, 1046 (2005))). We have held that an argument that consists of "two conclusory paragraphs" does not merit consideration on appeal. *Hall*, 2012 IL App (2d) 111151, ¶ 12. Accordingly, defendant's argument, which is similarly conclusory and unsupported, is forfeited. At any rate, we note that the trial court took measures to clear up any confusion in the record as to the validity of defendant's diagnoses by ordering him to be evaluated for malingering.

¶ 23    Finally, defendant argues that the trial court has consistently erred by failing to compel the Department to produce him for hearings.  He argues that "it seems counter-intuitive to rely upon [defendant] as the sole arbiter of whether he does or does not need to be made available to the trial court to ascertain his present condition."  He notes that there is no record of the Elgin Mental Health Center staff ever ordering him to attend a hearing.  Nor has the court ordered the treatment staff to physically compel defendant's attendance in court.  Finally, he notes that the court has never considered holding a review hearing at the Elgin Mental Health Center.

¶ 24    Defendant has forfeited these arguments by failing to cite any authority.  Nor does he acknowledge, let alone attempt to distinguish, *Olsson*, 2015 IL App (2d) 140955, in which we addressed his refusal to attend review hearings.  We held that section 104-16(c) of the Code, which pertains to a defendant's "right to be present at every hearing on the issue of his fitness" (725 ILCS 5/104-16(c) (West 2014)), does not apply to "treatment plan reviews during the section 104-25(g)(2) period of treatment [or] hearings conducted pursuant to section 104-25(g)(2)(i)" of the Code.  *Olsson*, 2015 IL App (2d) 140955, ¶ 22.  We stressed that, although defendant has a right to attend his hearings, he "rejected the court's attempts to facilitate his attendance."  *Olsson*, 2015 IL App (2d) 140955, ¶ 24.  Accordingly, even were we to overlook the forfeiture, defendant fails to explain why his argument is not foreclosed by our recent decision.

¶ 25    Moreover, to the extent that defendant complains about the trial court's refusal to hold hearings at the Elgin Mental Health Center, at the July 16, 2015, hearing, defense counsel did not ask the court to relocate the proceedings.  See *Olsson*, 2015 IL App (2d) 140955, ¶ 26 (points not raised in the trial court are forfeited on appeal).  Although the trial court has indeed rejected such

requests in the past, as explained above, only the order relating to the July 2015 hearing is properly before us.

¶ 26    In closing, although not raised by the parties, we again feel compelled to remind the trial court to ensure that its oral findings and written orders mirror the language of the statute. Specifically, at a section 104-25(g)(2)(i) hearing, the court must make a finding as to whether the defendant is: "(A) subject to involuntary admission; or (B) in need of mental health services in the form of inpatient care; or (C) in need of mental health services but not subject to involuntary admission nor inpatient care."  725 ILCS 5/104-25(g)(2)(i) (West 2014).  The parties and the trial court can consult our disposition in *People v. Olsson*, 2014 IL App (2d) 140635-U, for additional guidance.

¶ 27                                    III. CONCLUSION

¶ 28    For the reasons stated, we affirm the judgment of the trial court.

¶ 29    Affirmed.