2024 IL App (2d) 230045
No. 2-23-0045
Opinion filed August 29, 2024

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 20-CF-843 |
| DANA L. LEWIS, | ) ) ) | Honorable Paul Novak, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE McLAREN delivered the judgment of the court, with opinion.
Justices Jorgensen and Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, Dana L. Lewis, appeals from the trial court's order finding that she constituted

a serious threat to public safety after an extended period of fitness restoration treatment and

remanding her to the Illinois Department of Human Services (Department) for further treatment

pursuant to section 104-25(g)(2) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS

5/104-25(g)(2) (West 2018)). We vacate and remand.

¶ 2                              I. BACKGROUND

¶ 3    Defendant was indicted on one count of aggravated domestic battery (720 ILCS 5/12-3.3(a)

(West 2018)), two counts of aggravated battery (*id.* § 12-3.05(f)(1)), and two counts of domestic

battery (enhanced) (*id.* § 3-3.2(a)(1), (2), arising from the May 2020 stabbing of Deja Bradford, a

family or household member of defendant. Defense counsel filed a motion for a fitness evaluation, alleging that he had been unable to communicate effectively with defendant regarding the case and that defendant was unable to assist in her own defense at trial. The trial court found a *bona fide* doubt as to defendant's fitness to stand trial and ordered a fitness evaluation pursuant to section 104-13 of the Code (725 ILCS 5/104-13 (West 2018)). Dr. Janelle Shinhoster, a licensed clinical psychologist, conducted the evaluation and determined that defendant was unfit to stand trial. However, she concluded that it was likely that defendant's fitness could be restored within one year if defendant received consistent psychotropic medication and education on the legal system. The trial court found that defendant was not fit to enter a plea or stand trial and placed her in the custody of the Department for the provision of appropriate treatment.

¶ 4     For the next year, the Department conducted periodic examinations of defendant to determine if she would attain fitness in the course of the statutory one-year period and provided progress reports to the trial court. Each report indicated that defendant remained unfit. At the end of the one-year period, defendant filed a motion for a discharge hearing pursuant to section 104-25 of the Code (*id.* § 104-25), alleging that she had been unable to be restored to fitness within the one-year period. With defendant present remotely, the trial court held a discharge hearing on October 21, 2021, and found that the evidence was sufficient to prove defendant guilty beyond a reasonable doubt on the charges; therefore, it found defendant not "not guilty." The court then remanded defendant to the custody of the Department for further treatment for a period to end no later than May 28, 2027, with an updated evaluation to be performed within 90 days. Defendant subsequently filed a motion to reconsider, which the court denied. However, the court ordered that defendant's continued treatment was to end no later than October 14, 2022.

¶ 5       On October 4, 2022, the State informed the trial court that it intended to proceed with a civil commitment hearing pursuant to section 104-25(g)(2) of the Code (725 ILCS 5/104-25(g)(2) (West 2020)). The court subsequently ordered that a writ of *habeas corpus ad prosequendum* be issued directing the Elgin Mental Health Center (Elgin) to deliver defendant to the courthouse for the hearing.

¶ 6       On the hearing date of October 12, 2022, the State informed the trial court that defendant was not present. The State told the court that Laurie Babs from Elgin was informed by security at 7:30 that morning that "defendant refused to be transported to the hearing." The State answered ready for the hearing. The public defender argued that defendant had a right to be present at every hearing on the issue of fitness and that her presence could be waived only if a licensed physician who had examined defendant within the past seven days filed with the court a certificate stating that defendant was physically unable to be present, along with the reasons therefor. After a short recess, the State produced an affidavit of Shannon Davis, STA, of Elgin, in which she stated: "I approached Dana Lewis of said court date of 10/12/2022 @ 0900 in Courtroom T711 in Lake County before the Honorable Judge Christen Bishop at 0700 hours requesting that she prepare to depart." In response, defendant said, " 'get the F@*@ out of here, I am not going anywhere' along with several more swear words and continued walking back to her room." After further argument, the court continued the matter to the next day. If defendant were to decline transport, the State was to be prepared to call as a witness someone from Elgin, "like some counselor or doctor available to describe the efforts made to bring the defendant here."

¶ 7       On October 13, 2022, the State informed the trial court that it now believed that section 104-16(c) of the Code (*id.* § 725 ILCS 5/104-16(c)), which "provides for the procedure for waiving a defendant's right to be present on the issue of fitness," was inapplicable to the hearing that was

to be held, because the hearing was not about fitness. Defense counsel argued that the scheduled hearing was indeed a fitness hearing, that defendant had a right to be present, and that defendant's presence could be waived only via the filing of a certificate stating that she was physically unable to attend, supported by the reasons therefor.

¶ 8     The State also informed the court that defendant again refused to prepare herself to attend her hearing, either in person or via Zoom. Naina Desai, defendant's caseworker, was available to testify via Zoom. Desai provided an affidavit in which she stated:

> "I approached Dana Lewis of said court date of 10/13/2022 @ 1030 in Courtroom 712 in Lake County before the Honorable Judge Novak at 0958 hours requesting that she prepare to attend her hearing via zoom. In response, Dana Lewis stated 'No Ma am, I am not going to court because yesterday the ID they showed my [*sic*] was not mine, and I don't have an Attorney[;] call my brother.' "

The trial court, wanting to "to get into the efforts made this morning," examined Desai under oath via Zoom. When asked specifically about her efforts that morning "to try to get [defendant] to the Waukegan courthouse," Desai stated, "I went to her room and I asked her if she will go." Desai then repeated defendant's refusal as contained in the affidavit. When she gave defendant the option to participate via Zoom, defendant "declined." Under questioning from defense counsel, Desai testified that she was a licensed social worker, not a physician, and that she had been defendant's social worker since March 2022.

¶ 9     During argument, defense counsel stated:

> "I suggest [the court] direct them to make more efforts than asking what [*sic*] [defendant] wants to be brought here. Did they ask—to guide her to the car to do something more than ask what she wants.

Everything that I noted shows that she seems to lack capacity to understand what is going on, so she lacks the capacity to understand asking her whether or not she wants to do something does not seem like it's at all helpful."

¶ 10    After hearing argument from counsel, the trial court found that it was "clear" that, under the statute, the proceeding was "a determination of [defendant's] fitness, that she has a right to be present because we are deciding if she potentially can be involuntary [*sic*] committed for another seven years." However, the court was "not going to forcibly drag someone to [c]ourt" and would not "require the agency to forcibly drag her to [c]ourt." The court noted that there was nothing in the record "with regards to any efforts made by defense as to reasonable suggestions to get [defendant] here." The court noted that it had to "proceed with the case in some fashion," so it decided to begin the hearing that morning; it then received testimony during the 40 minutes that were available to the court that day and continued the case to another date. The court then stated:

"At that time the Court expects the same effort level, and I commend Elgin for their efforts in trying to address these issues with the Court. Mr. Trizna [defense counsel], you know I appreciate your efforts on behalf of your client. I am all for trying to get her here as well. But the fact of the matter is if someone refuses to come to [c]ourt at some point the Court has to proceed in the administration of justice. If someone avoids coming to [c]ourt, that delays the Court's ability to make rulings and make certain findings, and have hearings, and if that's the case then someone—I am not saying this person is doing this— but could thwart justice by refusing to come to [c]ourt."

¶ 11    The State then presented, via Zoom, the testimony of Dr. John Cummins, medical director at Elgin. With no objections, Cummins was found to be an expert in the field of psychiatry. Cummins had known defendant since March of 2021 and was her psychiatrist from May 2021

until March 2022. He opined that defendant suffered from schizoaffective bipolar disorder. This manifested itself in "continuing episodes of psychosis, specific delusions about being pregnant, having her baby stolen from her and being affected with multiple infections." Defendant also had "significant paranoid delusions about her food which result in her being quite aggressive when she sees food and at times throwing food at staff." Further, defendant had "episodes of elevated mood during which she has increased sleep and increased impulsivity which tends to augment her aggression significantly and also has episodes of depression where she will be withdrawn or unwilling to engage with staff." Cummins classified defendant's illness as "severe" per the Diagnostic and Statistical Manual of Mental Illnesses. Defendant had "a long history of mental health episodes including psychotic mood episodes throughout her adult life," and her current symptoms supported the diagnosis.

¶ 12    When Cummins had spoken to defendant that morning, defendant denied having any legal charges, any reason to come to court, or any history of legal troubles. She "focuses on being pregnant for the 40th time this year as she reported to me this morning." Defendant was "not aware" of her mental illness. She also demonstrated "significant impairment in judgment and her ability to engage in reality."

¶ 13    Cummins opined to a reasonable degree of psychiatric certainty that defendant continued to require inpatient mental health hospitalization. That opinion was based on defendant's "pattern of behavior that continues to escalate to the point of violence sometimes"; the acute intervention by treatment team members needed "to ensure her safety and the safety of others"; defendant's inability to engage in appropriate reality testing, which is "the ability to distinguish between what is real and what is not"; and her inability to engage in appropriate impulse control. Cummins also

found that "the facts of her initial recent offense suggests [*sic*] she represents risk of harm, especially given that she continues to engage in aggressive behavior."

¶ 14 Defendant repeatedly threw her food at staff and verbally assaulted staff and peers "regarding dealing with her children or recent abortions, or her having sexually transmitted infections." There were instances in which defendant spat at staff members and peers. Cummins opined to a reasonable degree of psychiatric certainty that, "without structure and oversight in a psychiatric hospital[,] Ms. Lewis would be subject to inflict serious physical harm."

¶ 15 Defendant was not currently on any medications, as she had declined all medications at the facility. Based on defendant's aggressive behavior and "the evidence of deterioration clearly over the last several months," the hospital was seeking involuntary medication. Defendant daily declined group and individual therapy. Cummins recounted multiple instances in 2022 in which defendant threw food or garbage at staff or on the floor, made threats, spit out medications, and required emergency medication due to threats or aggression toward staff.

¶ 16 The court halted the proceedings because of the lunch hour and a personal commitment. Defense counsel argued that defendant's treatment was to terminate no later than October 14, 2022, so he was "not sure under what grounds [defendant] would be in custody of the Department of Human Services after October 14." The State argued that, as the hearing had been started, the time in which a decision must be reached would be tolled. The court cited *People v. Lavold*, 262 Ill. App. 3d 984 (1994), for the proposition that a section 104-25(g)(2) hearing "not timely held does not allow automatic release of the defendant" and continued the case until October 24, 2022.

¶ 17 On October 24, 2022, Cummins was ill. The court entered an agreed order continuing the case until November 2, 2022, and waiving defendant's "presence today for the purpose of seeking this continuance only."

¶ 18    Defendant was not present in court or on Zoom when the hearing resumed on November 2, 2022.  Desai, on Zoom, told the court that, on several occasions since the last court date, she had spoken to defendant about going to court or speaking with her attorney. On all occasions, defendant refused, and she made delusional and bizarre statements including, "[T]hey check my babies in the incubator" and "I'm pregnant; I need to sleep." That morning, Desai "encouraged [defendant] to go to court and talk to her attorney or by phone." Defendant "declined," saying. "Michael is my attorney. I'm not going to talk to anyone, anybody's attorney. Michael is the only person. I'll talk to her [*sic*]. This is Michael." She then walked away.

¶ 19    Defense counsel objected to waiving defendant's presence, arguing that the State had not presented an affidavit from a licensed physician stating that defendant was physically unable to be present in court. Desai's testimony demonstrated only defendant's "mental unwillingness to come here, no additional efforts made to physically bring her here. And I don't even mean physically kicking, dragging, and screaming; I mean directing towards." Addressing the objection, the court stated: "And just so we're clear on the record, the Court's not considering a waiver in this position. That would be a party asking for the Court to waive her presence. *She's refusing to come to court*. I think that's a different situation than [*sic*] a waiver." (Emphasis added.) The court asked counsel for suggestions on how to proceed. Counsel responded, "Judge, I would ask that they attempt to bring her here physically." Counsel said that he had "no interest whatsoever" in any injury befalling defendant but that "merely asking somebody who the State and Elgin believes is unfit whether they want to do anything is frankly preposterous."

¶ 20    The State responded that defendant "has a right to be present, but she has a right not to be present." The State had obtained a writ and provided transportation. "We've had conversations with her that she does not want to be here, and she has a right not to be here." The State also

commented that there was "no indication that anyone from the Public Defender's Office has tried to make a phone call or even go over there and talk to Ms. Lewis to see why she's unwilling to come."

¶ 21   The court then held:

> "So the Court—this situation came up on the last court dates. And as the Court has made a record, we've made efforts to try and obtain Ms. Lewis to either come via Zoom from Elgin, to come here in person, and she's refusing those requests.
>
> The Court doesn't believe it's in the best interest of Ms. Lewis or any of the parties involved that we physically drag her to court. I think that opens up a lot of other issues that are just—safety issues for the staff, for the courtroom, et cetera, and the Court's not inclined to do that."

Therefore, the court proceeded with testimony over counsel's objection.

¶ 22   On cross-examination, Cummins testified that he had worked directly with defendant for 15 months, seeing her "nearly daily on every business day" when he was her attending psychiatrist, and had supervised her clinical services since the beginning of August, seeing her once a week. Most of the daily visits were "very short" because he "would be dismissed or sworn at or have other implications [*sic*] hurled at me." While defendant participated in her staffings "during moments of increased clarity," those instances "would still be very short indeed" before defendant "descended into significant psychosis and would leave the room, usually quite angry." Even sustained conversations

> "were always marked by delusional thought processes, almost invariably about her being pregnant with a biologically impossible number of children or that her babies have been stolen from her or a time she would comment on having multiple STDs that I would offer

to have her—refer her for examination and treatment and was told that she was not interested by her."

¶ 23    While defendant had never attacked him, and he had never seen her injure herself, Cummins had seen defendant attack staff members multiple times. The attacks entailed "everything from spitting at staff, throwing food at staff, [and] throwing her tray at staff." However, he did not believe that he had witnessed her "lay hands on another staff."

¶ 24    Since December 2020, when she had entered Elgin, defendant had never been administered medication to treat her schizoaffective bipolar disorder. She had been administered only emergency medications that were also frequently indicated for schizoaffective disorder. Schizoaffective bipolar disorder did not resolve by itself without medication. While it was possible for the psychosis to resolve on its own, the scientific consensus on psychosis and serious mental illness episodes in general was that, the longer someone stayed in an untreated episode of severe mental illness, the more likely that future episodes would be more severe and more frequent. Being a patient in a psychiatric hospital with structure and psychological programming, such as Elgin, tended to provide the "backbone" for someone to willingly engage in treatment. However, defendant had not availed herself of any significant amount of that treatment.

¶ 25    On redirect examination, Cummins testified that, according to his conversations with defendant's treatment team, defendant continued to demonstrate "significant verbal aggression towards staff and peers and continued episodes of throwing food on the floor." Defendant needed "frequent reminders and sometimes gentle coaxing to be reminded that, you know, having clean clothes and taking care of one's hygiene is important." Defendant was "frequently resistant" to those reminders. Approximately one-third to one-half of the time, defendant's movement had been

limited in her unit because she had been on "frequent observations for aggression[,] which restricts an individual to the unit secondary to concerns for risk of harm to others."

¶ 26 The State requested that the court take judicial notice of the findings, orders, and progress reports in the court file and then rested. Defense counsel told the court that he wished to call defendant to testify but was "unable to do so." When asked by the court what efforts he had made to secure defendant's presence, counsel responded, "Judge, based on the State's issuance of the writ, I have made no additional efforts other than the writ." Counsel had "[n]othing further than what I established at the beginning of the hearing" to procure defendant's testimony and was fine with proceeding to argument.

¶ 27 After hearing argument, the trial court reviewed Cummins's testimony, the reports from the Department from the period that defendant was in treatment at Elgin, and the court file. The court noted Cummins's status as an expert in psychiatry and as defendant's treating psychiatrist for an extended period, along with his opinion that defendant had a mental illness—schizoaffective bipolar disorder—and suffered from psychosis and paranoid delusions. The court specified Cummins's opinion that defendant was "an acute risk to others of harm and that she is a serious— could pose serious harm to others."

¶ 28 While discussing the Department progress reports, the court highlighted a December 29, 2021, report that listed multiple incidents over a two-month period that "showed increased agitation and aggression which resulted in utilization of emergency medications and/or physical holds in that [defendant] punched chairs, knocked down chairs, threatened staff. She was observed spitting, yelling, and cursing at staff." The court found that defendant's aggression was not only verbal: "It was also her actions and that she was actually then restrained based on her inability to comply with orders of the treatment team while she was at Elgin Mental Health." The court also

considered the nature of the domestic battery and aggravated domestic battery charges lodged against defendant, noting that the testimony proffered by the State at the discharge hearing included the fact that defendant "stabbed another individual with a knife."

¶ 29    The court found that the State had met its burden of proving that defendant was not currently fit to stand trial. It further found that the State proved by clear and convincing evidence that defendant was subject to involuntary admission under the Mental Health and Developmental Disabilities Code (405 ILCS 5/1-100 *et seq.* (West 2020)) and also constituted a serious threat to public safety. Therefore, the court remanded defendant to the Department for further treatment, with the term of treatment expiring on November 2, 2029. The court continued the case until January 31, 2023, for a 90-day report. On its preprinted written order, the court, instead of checking the box that defendant's presence was "waived pursuant to 725 ILCS 5/104-20(a) and 725 ILCS 5/104-16(c)," handwrote "Defendant refused to attend court."

¶ 30    Defendant filed a four-count motion to reconsider, two counts of which the trial court denied. In addressing defendant's third allegation, the court explained that, in filling out the preprinted written order, it had "mistakenly checked the box that marks 'subject to involuntary admission under the Mental Health and Developmental Disabilities Code.' " The court prepared an amended order in which it indicated only that defendant was to be committed because she constituted a serious threat to the public safety. The court also agreed with defendant's fourth contention and amended the order to reflect that defendant's term of treatment was to expire on July 14, 2027, instead of November 2, 2029. This appeal followed.

¶ 31                                    II. ANALYSIS

¶ 32    Defendant now contends that the trial court erred in proceeding with the hearing under section 104-25(g)(2) of the Code ((g)(2) hearing) (725 ILCS 5/104-25(g)(2) (West 2020)) in

defendant's absence. According to defendant, she had a statutory right to be present at the hearing "that could only be waived if a valid certificate was filed with the court in accordance with 725 ILCS 5/104-16(c)." Section 104-16(c) of the Code provides:

> "The defendant has the right to be present at every hearing on the issue of his fitness. The defendant's presence may be waived only if there is filed with the court a certificate stating that the defendant is physically unable to be present and the reasons therefor. The certificate shall be signed by a licensed physician who, within 7 days, has examined the defendant." *Id.* § 104-16(c).

¶ 33 The State argues that "there was neither a fitness hearing requested nor held" at the (g)(2) hearing and that section 104-16(c) is inapplicable here. As the resolution of this contention requires us to interpret several statutes, our review is *de novo*. See *People v. Olsson*, 2015 IL App (2d) 140955, ¶ 17.

¶ 34 We must first address the State's contention that the (g)(2) hearing was not a fitness hearing. Section 104-25(g)(2) of the Code expressly requires that, prior to determining whether a defendant is subject to involuntary admission or constitutes a serious threat to public safety, the trial court must determine "[i]f the defendant *continues to be unfit* to stand trial." (Emphasis added.) 725 ILCS 5/104-25(g)(2) (West 2020). As this court has previously held, "The Code specifically provides for the original fitness determination *and the threshold fitness determination for commitment under section 104-25(g)(2).*" (Emphasis added.) *People v. Olsson*, 2012 IL App (2d) 110856, ¶ 19. We also note that the preprinted court order entitled "ORDER AT THE EXPIRATION OF THE EXTENDED PERIOD OF TREATMENT," which the trial court filled out after the (g)(2) hearing, provided, "This cause having come on to be heard at the expiration of the extended period of treatment pursuant to 725 ILCS 5/104-25(g)(2) *for the purpose of*

*determining whether the defendant is fit* and, if not whether the defendant is subject to commitment to the Department of Human Services." (Emphasis added.) Section I of the order involved "Issue of Fitness." Subsection A. 1. provided for a finding that "[t]he defendant has attained fitness. The criminal case shall resume." The trial court checked subsection B., which provided, in relevant part: "(If not fit) The evidence does not establish by a preponderance that the defendant has become fit." Clearly, the issue of a defendant's fitness is of primary concern in a (g)(2) hearing such that defendant had the right to be present during the proceedings, and questions involving defendant's right to be present at the hearing must be addressed. The State's contention here is without merit.

¶ 35    Defendant argues that her right to be present at the (g)(2) hearing, pursuant to section 104-16(c) of the Code, was violated when the hearing proceeded in her absence. According to defendant, her presence could be waived only via the filing of a certificate from a licensed physician who had examined her within the past seven days, "stating that the defendant is physically unable to be present and the reasons therefor." See 725 ILCS 5/104-16(c) (West 2020). There is no question that no such certificate was filed in this case.

¶ 36    We agree that defendant's presence at the proceedings was not waived. The specific statutory requirements for waiver were not met. The trial court here stated:

"And just so we're clear on the record, the Court's not considering a waiver in this position. That would be a party asking for the Court to waive [defendant's] presence. [Defendant is] refusing to come to court. I think that's a different situation than [*sic*] a waiver."

In its written order at the conclusion of the hearing, the court also did not mark the box indicating that defendant's presence was "waived pursuant to 725 ILCS 5/104-20(a) and 725 ILCS 5/104-

16(c)"; instead, it handwrote "Defendant refused to attend court." We note that this was not a matter of the court checking the wrong box; there simply was no valid waiver.

¶ 37    Waiver is the "intentional relinquishment or abandonment of a known right." (Internal quotation marks omitted.) *People v. Blair*, 215 Ill. 2d 427, 444 n. 2 (2005). What the trial court held *in essence* was that, by refusing to attend court, defendant forfeited her right to be present at the hearing. Forfeiture is defined as "the failure to make the timely assertion of [a] right." *Id.* However, such a conclusion is not supported by law or fact here.

¶ 38    First, we note that defense counsel repeatedly asserted defendant's right to be present and objected to the noncompliance with the waiver requirements of the statute. Asserting a right and objecting to proceeding in contravention of that right is, by definition, not a forfeiture.

¶ 39    Second, more than two years before the hearing, defendant had been found "not fit to enter a plea or stand trial." A defendant is unfit "if, because of his mental or physical condition, he is unable to understand the nature and purpose of the proceedings against him or to assist in his defense." 725 ILCS 5/104-10 (West 2020). While defendant had undergone fitness restoration treatment throughout that period, she was still being held in custody subject to that finding of unfitness. "A defendant who has previously been found unfit is presumed to remain unfit until there has been a valid hearing finding him fit." *People v. Payne*, 2018 IL App (3d) 160105, ¶ 10. The legislature has determined that such an unfit individual is legally incompetent to waive her right to be present at her (g)(2) hearing. Waiver is the "intentional relinquishment or abandonment of a known right." (Internal quotation marks omitted.) *Blair*, 215 Ill. 2d at 444 n.2. Such a waiver in the (g)(2) context can be made only by a licensed physician who had examined the defendant within the past seven days and certified to the court, with reasons therefor, that the defendant was physically unable to be present. See 725 ILCS 5/104-16(c) (West 2020). Yet the trial court's

determination here allowed defendant—the same unfit person who could not, by law, intentionally relinquish or abandon her right to be present at the hearing—to decide to not enforce that right by "refusing to come to court." In this situation, defendant's refusal to attend her hearing achieved the same result as the statutorily required physician's certification to the court. Yet, an unfit person is presumed not to be able to make such a decision and, thus, can neither waive nor forfeit a right to be present.

¶ 40    Even if allowing an "unfit" defendant to decide for herself not to attend her hearing were logical and proper, we are troubled by the circumstances that were said to demonstrate defendant's forfeiture. The record in this case would not support a finding that defendant knew she had a right that could be enforced or that she declined to enforce that right. There is no evidence to support a conclusion that anyone had truly explained to defendant the nature of the court proceedings, her right to attend the hearing, or the implications of her refusal to do so. Further, there is scant evidence that defendant actually declined to attend court and agreed that the hearing could be held in her absence.

¶ 41    On the October 12, 2022, hearing date, the State told the court that Babs was informed by Elgin security at 7:30 that morning that "defendant refused to be transported to the hearing." In her affidavit of the same date, Davis stated: "I approached Dana Lewis of said court date of 10/12/2022 @ 0900 in Courtroom T711 in Lake County before the Honorable Judge Christen Bishop at 0700 hours requesting that she prepare to depart." The next day, Desai averred that she "approached" defendant one half-hour before her court date, "requesting that she prepare to attend her hearing via zoom." When the court asked specifically about Desai's efforts that morning "to try to get [defendant] to the Waukegan courthouse," Desai stated, "I went to her room and I asked

her if she will go."[1] On November 2, 2022, Desai testified that she had spoken to defendant about going to court or speaking with her attorney several times since the last court date; on all occasions, defendant refused, giving "delusional and bizarre statements" as to why she could not.

¶ 42    Defendant had been judicially found to be unable to understand the nature and purpose of court proceedings against her or to assist in her own defense. She was the subject of a writ of *habeas corpus ad prosequendum* that directed Elgin to deliver her to the courthouse for the hearing. Defendant's refusal to get ready to go to court when asked to (while giving "delusional and bizarre" reasons for not doing so), with no evidence of any other explanation to defendant of events or legal consequences, cannot be found to be a basis for a finding that she declined to attend court and the hearing could proceed in her absence. We agree with defense counsel's assertion to the trial court that "merely asking somebody who the State and Elgin believes is unfit whether they want to do anything is frankly preposterous." As counsel also suggested, the court should have directed Elgin to "make more efforts" than merely asking if defendant wanted to get ready for court. Again, Elgin had been ordered by the court to deliver defendant to the courthouse for the hearing. Elgin did little to attempt to comply with this order; the court did little to enforce it, finding merely that defendant was "refusing those requests" to attend her hearing.[2] Proceeding with the (g)(2) hearing in

---

[1]We will leave aside the fact that Desai's affidavit involved only asking defendant to prepare for a Zoom hearing, while her testimony also involved, in the trial court's words, "try[ing] to get [defendant] to the Waukegan courthouse."

[2]We also note that there was no evidence that defense counsel made any effort to contact his client, let alone attempt to explain the situation to her and render relevant advice. However, the issue here is the trial court's failure to properly proceed in defendant's absence, not whether

defendant's absence was error, and the trial court's January 31, 2023, order, finding defendant to be a serious threat to public safety and committing her to a secure setting, must be reversed.

¶ 43 We also conclude that this cause can be remanded for a retrospective (g)(2) hearing to determine defendant's fitness as of October 12, 2022. While our supreme court has, in the past, disapproved of retroactive fitness hearings, that disapproval "has since been overcome." See *People v. Gipson*, 2015 IL App (1st) 122451, ¶ 38. Such hearings "are now the norm." *People v. Mitchell*, 189 Ill. 2d 312, 339 (2000). This hearing is to be conducted either with defendant in attendance or with her presence properly excused. There is a wide range of options available between asking defendant if she wants to get dressed to go to court and physically dragging her into court. Defendant's right to be present for her hearing is a substantial right; it may not be dispensed with for other than permitted reasons.

¶ 44 III. CONCLUSION

¶ 45 For these reasons, the judgment of the circuit court of Lake County is vacated and the cause is remanded with directions.

¶ 46 Vacated and remanded with directions.

---

counsel provided effective assistance to his client.

---

*People v. Lewis*, **2024 IL App (2d) 230045**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Lake County, No. 20-CF-843; the Hon. Paul Novak, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | John W. Radosevich and Katherine A. McCollum, of Del Re Law Group, of Waukegan, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Eric F. Rinehart, State's Attorney, of Waukegan (Patrick Delfino, Edward R. Psenicka, Victoria E. Jozef, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |